DECISION
This legal malpractice matter was heard by the court sitting without a jury on March 14, 1997. A full recitation of the facts of this case are set forth in the court's previous decisions,Clauson v. Kirshenbaum, C.A. No. 92-3410, January 19, 1996 and May 30, 1996, and. as such, only the essential facts bear repetition at this time. The plaintiff, John Clauson (plaintiff), retained the defendant, attorney Sanford M. Kirshenbaum (defendant), to represent his interests in a divorce proceeding before the Family Court. That court determined that the marital assets were to be divided equally between plaintiff and his wife. Among these possessions was a commercial fishing trawler known as the "Maxine Grace." The Family Court appointed two commissioners to supervise any sale of the assets, and a subsequent appraisal of the boat yielded a fair market value of $267,300. The parties were unable to reach a divorce settlement and the Family Court ordered that the boat be listed for sale at the appraisal value. An offer of $160,000 was reported to the commissioners. On June 4, 1991, the Family Court determined that this offer represented the only viable offer at the time and ordered that the boat be sold, providing that the parties could not reach a settlement within forty eight (48) hours. The parties failed to resolve their dispute and on June 6, 1991, the Family Court ordered the sale to proceed. The defendant failed to attend either the June 4 or June 6 hearing.
In a decision issued on January 19, 1996, this court awarded damages to plaintiff in the amount of $97,716. The court determined that "[t]he defendant's failure to appear at the June 4, 1991, hearing constitut[ed] a clear breach of duty," and that had defendant appeared at the hearing he would have had a duty to advise plaintiff to purchase the boat for $179,167.50.[1] The defendant moved pursuant to Rule 59 of the Superior Court Rules of Civil Procedure to amend the judgment or, in the alternative, for a new trial. On May 30, 1996, the court issued a second decision. Specifically, the court determined that its prior decision was erroneous because "plaintiffs damages flow[ed] not from the defendant's failure to appear at the hearings but rather from his failure to advise the plaintiff to purchase the boat." The court went on to conclude that the decision was "affected by a manifest error of law" and that the case had to be re-opened "for the presentation of expert testimony on this issue" as well as "plaintiffs ability to obtain other financing to satisfy the full purchase price."
Pursuant to the May 30, 1996 decision, the parties appeared before this court on March 14, 1997 to present additional evidence. The plaintiff called four witnesses. The first was attorney Robert Oster (Oster), a qualified expert in domestic relations in Rhode Island. Oster testified to a reasonable degree of certainty that a reasonable attorney exercising the degree of care, skill, and diligence commonly exercised and possessed by an attorney in Rhode Island would be under a duty to advise his or her client about the sale of the boat and the client's right to extend an offer to purchase the vessel. Oster further testified to a reasonable degree of certainty that defendant's failure to advise plaintiff of his ability to purchase the boat, as well as his failure to attend the hearings on June 4 and June 6, 1991, represented a deviation from the accepted standards of practice before the Family Court and constituted a breach of duty owed to plaintiff.
The following three witnesses testified concerning plaintiff's financial ability to purchase the boat. James Tiernan (Tiernan), a vice president at Fleet Bank who supervised plaintiffs mortgage payments on the fishing trawler, testified that he would have recommended a re-financing plan to the bank in order for plaintiff to purchase the vessel had plaintiff so requested. The plaintiff then testified that defendant failed to advise him of his rights regarding the possible purchase of the boat and had neglected to attend the two hearings in June of 1991. The plaintiff also stated that had he been advised of his rights to purchase the fishing trawler, he would have sought re-financing from Fleet Bank. Finally, plaintiffs brother testified that he and his father would have assisted plaintiff financially in order to effectuate plaintiff's purchase of the boat. The defendant was given the opportunity to cross-examine each witness, but called no witnesses on his behalf. The court found each of the aforementioned witnesses credible, compelling and persuasive.
It is well settled in Rhode Island that a plaintiff alleging legal malpractice must prove the "want of ordinary care and skill" exercised by the defendant attorney. Holmes v. Peck,1 R.I. 242, 245 (1849). While no Rhode Island case has ever defined how a plaintiff must satisfy this burden of proof, "a review of other jurisdictions indicates that the most widely accepted rule is that a legal malpractice plaintiff must present expert testimony establishing the appropriate standard of care unless the attorney's lack of care and skill is so obvious that the trier of fact can resolve the issue as a matter of common knowledge." Focus Investment Associates, Inc. v. AmericanInsurance Company, 992 F.2d 1231, 1239 (1st Cir. 1993) (construing Rhode Island law).
In the present case, the court previously determined that expert testimony was needed to buttress plaintiffs claim of legal malpractice for defendant's failure to advise plaintiff of his right to purchase the boat. Having reviewed the testimony of plaintiffs expert, this Court finds that plaintiff has satisfied his burden of proof and has proven that defendant breached his duty of "ordinary care and skill." Further, plaintiff has presented sufficient evidence to indicate that he could have obtained the financing necessary to satisfy the purchase price of the boat had defendant advised him of his right to purchase the vessel.
For all of the foregoing reasons, the damages previously awarded stand in the amount of $97,716, representing $88,132.50 gain foregone on the vessel and $9,583 loss actually realized on the marital domicile.
Counsel shall prepare the appropriate order.
[1] This figure represents the minimum amount at which plaintiff could have paid both the boat's mortgage ($158,000) and the Commissioner's fees ($21,167.50). This court previously determined that since this amount would have satisfied plaintiff's wife's share of those liabilities, a reasonable family court judge would have found it to be an acceptable offer.